## GRANGERS' MARKET COMPANY, RESPONDENT, v. J. S. VINSON, APPELLANT.

STOCKHOLDER—WHAT WILL CONSTITUTE.—Defendant subscribed the following writing: "We, the undersigned, hereby authorize J. J. Imbrie, secretary of the Grangers' Market Company, to affix our names to the capital stock of the said company for the number of shares of said stock set opposite to our respective names. Names, J. S. Vinson; No. shares, 5; amount $100; name of Grange, Lena; post-office, Umatilla county, Oregon." The said J. J. Imbrie, secretary of said corporation, thereafter wrote the name of defendant in what was headed "stockholders" in a list purporting to be a list of the stockholders of said corporation, in a book which he testified was the stock-book of said corporation. The name was written with the following addition: "J. S. Vinson, Lena, Umatilla county, Oregon," "5," "$100:" *Held*, that such signing and subscription did not constitute defendant a stockholder of said corporation.

APPEAL from Umatilla County.

*Lucian Evarts*, for appellant.

*T. H. Tongue*, for respondent.

The facts are stated in the opinion of the court.

By the Court, WATSON, J.:

This is an action brought by a corporation against a person who is claimed to be one of its stockholders, to recover delinquent assessments to the amount of one hundred dollars. The defendant, by his answer, denies that he ever became or is a stockholder in the corporation plaintiff, or liable to pay its assessments. The bill of exceptions purports to contain all of the material evidence offered by plaintiff tending to prove defendant's subscription to its capital stock. The court below instructed the jury that "the signing by the defendant of the printed agreement produced in evidence, and the subsequent signing of his name in the stock-book of the corporation, by J. J. Imbrie, the secretary thereof, was a sufficient contract on the part of the defendant to render him liable as a stockholder of said corporation in an action brought against him by the plaintiff to recover assessments."

This instruction was excepted to by counsel for defendant.

The printed agreement produced in evidence is incorporated in the bill of exceptions, and the following is a copy of the agreement, with the signature of defendant and additions:

" We, the undersigned, hereby authorize J. J. Imbrie, secretary of the Grangers' Market Company, to affix our names to the capital stock of the said company, for the number of shares of said stock set opposite to our respective names:

| Names. | No. Shares. | Amount. | Name of Grange. | Post-office. |
|---|---|---|---|---|
| "J. S. Vinson. | 5. | $100. | Lena. | Umatilla Co., Or." |

Printed upon the same sheet and above the printed agreement, are the articles of incorporation of the plaintiff.

J. J. Imbrie, secretary of the corporation, subsequent to the subscription by defendant to the printed agreement, wrote the name of the defendant, with the names of other stockholders, in a list headed " Stockholders," in the stockbook of the corporation, and in that list wrote opposite the name of defendant the following words and figures: "Lena, Umatilla Co., Oregon." "5." "$100." It nowhere appears in the stock list that it was intended as a subscription to the capital stock, or that it was other than the ordinary list of stockholders kept by the secretary for reference. It discloses no agency or intention on the part of Imbrie to act as agent for any one. It is not a subscription list. It does not purport to be such a list. Imbrie testifies that "his authority for so doing was set forth in a printed paper or document signed by defendant, with the addition of five shares and one hundred dollars attached to his name," referring to the paper already mentioned. Did defendant thereby become a stockholder of the Grangers' Market Company? Upon the answer to this question depends the correctness of the instruction under review, and plaintiff's right to recover. If he did not become a stockholder, the other questions presented in the argument are immaterial

After a careful examination of the pleadings and the evidence contained in the bill of exceptions, we have arrived

at the conclusion that while the printed paper signed by defendant was sufficient to authorize J. J. Imbrie to subscribe for defendant for five shares of the capital stock of the corporation, he did not act under that authority, and did not, in the name of the defendant, subscribe for or agree to take said stock.

The printed paper signed by defendant, was but the mere appointment of an agent for a special purpose. Before the principal could be bound, it was necessary that the agent should act under his appointment, and affix his name to a subscription of the stock. This he did not do. He wrote the name of defendant in the stock-book as the holder of five shares of stock; but he wrote it in a mere list of stockholders, such as it was necessary for the secretary to keep in order to know who were stockholders. It nowhere appears that he did this as agent for defendant, or intended it as a subscription to the stock. A subscription to the capital stock of a corporation is a contract between the subscriber and the corporation, by which the subscriber agrees to take a certain number of shares of its capital stock, and we think that where a bare subscription is relied upon to prove that a person is a stockholder, there should be enough in the subscription list itself to show his intention to take that number of shares.

It was the duty of the corporation to keep a stock-book in such a manner as to show intelligibly the original stockholders, their respective shares, etc. (Stats. of Or. 527, sec. 12.) This duty being clerical, is necessarily performed by the secretary. To keep such a book as secretary of the corporation is all that Imbrie appears to have done. Had he signed the name of his principal to a regular and valid subscription-list it would have been proper that the signature should appear to have been made by him as agent. His agency might have been shown by extrinsic evidence, but the evidence fails to show that the writing of the name of J. S. Vinson in the stock-book, was made or intended as a subscription to the capital stock. The instruction was, therefore, erroneous, and for that reason the judgment of the court below should be reversed.

Defendant not being shown to be a stockholder of the Grangers' Market Company, it is unnecessary to decide whether or not a stockholder is liable without an express agreement to pay assessments, to an action on the part of the corporation to recover such assessments. This is an important question in the law of corporations, and different rules have been adopted by the courts of different states. We are not prepared, without further argument, to decide which is the better rule.

We think there was no error in the rulings of the court below excluding the statements of William Jolly. The allegations of fraud in the answer were insufficient. It should not only have alleged that the representations of Jolly were false, but that he knew that they were false; or that he asserted them as facts within his own knowledge. This was our conclusion in the case of *Rolfes* v. *Russell*, 5 Or. 400, and we have found no reason for changing the opinion therein announced.

Nearly all of those statements were mere matters of opinion, and are not such statements of facts as if false would avoid the contract. A number of other questions are raised on this appeal, but with our opinion already given upon the first question decided, it is not necessary to pass upon them.

The judgment of the court below will be reversed.